UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**BRENDA M. BROCK**

        **Plaintiff,**           **CIVIL ACTION NO. 04-CV-40310**

       **vs.**                      **DISTRICT JUDGE PAUL V. GADOLA**

**COMMISSIONER OF**        **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

        **Defendant.**
_____/

## REPORT AND RECOMMENDATION

This Court recommends that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Motion for Summary Judgment be **GRANTED**. The decision of the Commissioner is supported by substantial evidence on the record.

## PROCEDURAL HISTORY

This is an action for judicial review of the final decision by the Commissioner of Social Security that the Plaintiff was not "disabled" for purposes of the Social Security Act. 42 U.S.C. §§ 423, 1382. The issue for review is whether the Commissioner's decision is supported by substantial evidence on the record.

Plaintiff Brenda Brock filed an application for Supplemental Security Income (SSI) on June 22, 2001 alleging a disability onset date of January 17, 2001. (Tr. 48). Defendant initially denied Plaintiff's application on November 6, 2001. (Tr.32). Plaintiff received a hearing before ALJ Douglas N. Jones on April 11, 2003. (Tr. 370-418). The ALJ issued a written opinion denying Plaintiff's claims on July 21, 2003. (Tr. 19-27). The Appeals Council subsequently denied review, and the ALJ's decision is now the final decision of the Commissioner. (Tr. 5-7); 20 C.F.R. §

404.981. Plaintiff appealed the denial of her claims to this Court, and both parties have filed motions for summary judgment.

## MEDICAL HISTORY

Plaintiff was born on May 30, 1952. (Tr. 48). Plaintiff has had difficulty controlling her diabetes over the last several years.

A sleep study of Plaintiff performed on January 8, 2001 showed that Plaintiff's mild sleep apnea was controllable with a CPAP machine. (Tr. 101). Plaintiff fell and injured her leg on June 17, 2000. She was treated by Joseph Bustamante, D.O., who concluded that Plaintiff had suffered a leg contusion and foot sprain, and advised her to walk with crutches and bear weight on the injured leg as tolerated. (Tr. 112). On April 29, 2001 Monica Johnson, M.D. treated Plaintiff for a right finger infection. (Tr. 115).

A state agency physician physical residual functional capacity evaluation of Plaintiff on August 20, 2001. (Tr. 122-128). The physician concluded that Plaintiff had the physical capacity to perform light work with some postural limitations and no exposure to workplace hazards. *Id.* On August 31, 2001 Leonard J. McCulloch, M.A. gave Plaintiff a psychological evaluation. (Tr. 130-34). He concluded that Plaintiff had recurrent major depression and a cognitive disorder secondary to Plaintiff's poorly controlled diabetes and hypoglycemia. *Id.* He gave Plaintiff a Global Assessment of Overall Functioning (GAF) score of 60 out of 100. *Id.*

Plaintiff was examined monthly by Wael J. Salman, M.D. in 2001 and early 2002. (Tr. 226-239). Despite being on an insulin pump, Plaintiff had widely fluctuating glucometer readings for most of 2001. (Tr. 232-239) Dr. Salman's notes from September 6, 2001 indicate that Plaintiff's glucometer readings for the preceding week were somewhat improved. (Tr. 231). Plaintiff

consulted Michael Schmidt, D.O. on October 3, 2001 regarding her left knee pain. (Tr. 177-178). On October 19, 2001 Rom Kriaucinnas, Ph.D. performed a psychiatric review technique on Plaintiff on October 19, 2001. (Tr. 157-59). He concluded that Plaintiff suffered moderate limits in social functioning, concentrating, and maintaining persistence and pace. *Id.*

An MRI of Plaintiff's left knee taken on October 22, 2001 showed a radial tear of the left meniscus with small joint effusion. (Tr. 156). Dr. Schmidt performed arthroscopic surgery on Plaintiff's left knee on October 26, 2001. (Tr. 182). On October 30, 2001 Martha J. Ade, R.N. noted that Plaintiff remained unable to adequately control her glucose levels. (Tr. 286). On December 11, 2001 Dr. Salman noted that Plaintiff's glucometer readings had improved, and concluded that Plaintiff was ready to return to work. (Tr. 228). On January 9, 2002 Plaintiff told Dr. Salman that she could not return to work unless her glucometer readings remained above 60 for four weeks. (Tr. 227). Dr. Salman determined that Plaintiff's blood sugar levels could not be controlled within the limits given by her employer. *Id.*

On June 5, 2002 Plaintiff was voluntarily admitted to Memorial Healthcare Center in Owosso, MI with suicidal ideation. (Tr. 273-274). Nazar Al-Saidi, M.D. concluded that Plaintiff was having a severe depressive episode, and gave Plaintiff a GAF score of 20 out of 100. *Id.* Plaintiff remained in the hospital through June 11, 2002. (Tr. 288). Plaintiff's blood sugar was well controlled during her hospitalization, and Plaintiff's children reported to Dr. Al-Saidi that Plaintiff was not compliant with her diabetic diet at home. *Id.* Plaintiff continued to show symptoms of severe depression during follow-up visits with Dr. Saidi on October 29, 2002 and December 12, 2002. (Tr. 308, 309). Dr. Salman's treatment notes from December 17, 2002 show that Plaintiff's

glucometer readings had run high for a few days in the preceding week but had subsequently been near the normal range. (Tr. 311).

A. Borders-Robinson, D.O. examined Plaintiff on February 23, 2004 following Plaintiff's complaints of memory loss. (340-344). Plaintiff did not exhibit any abnormality or memoery deficits during a variety of neurological tests. *Id.* As of May 13, 2004, Dr. Borders- Robinson was unable to find any explanation for Plaintiff's subjective complaints. (Tr. 339).

On July 26, 2004 Plaintiff was treated at Memorial Healthcare Center in Owosso, Michigan for complaintfs of dysphagia and sudden weight loss. (Tr. 347). She was scheduled for an upper endoscopy. *Id.*

## **HEARING TESTIMONY**

Plaintiff appeared at a hearing before ALJ Douglas N. Jones on April 11, 2003. (Tr. 370-418). The ALJ also took testimony from Mary Williams, a vocational expert. *Id.* The vocational expert was instructed to testify about the availability of jobs for a hypothetical person of Plaintiff's age and educational level who was capable of low-stress work with no more than occasional bending at the waist, occasional bending of the knees, occasional kneeling, occasional climbing of stairs, occasional interaction with the general public, occasional changes in work setting and procedures, and who could not work in a job that required crawling, climbing ladders, exposure dangerous machinery, exposure to unprotected heights, or the ability to follow detailed instructions or concentrate for extended periods. (Tr. 413). The vocational expert testified that such a person would be unable to perform any of Plaintiff's past work, but could perform a number of light and sedentary jobs. (Tr. 411-15).

**STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) gives this Court jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). It is not the function of this court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

In determining whether substantial evidence supports the Commissioner's decision, the Court must examine the administrative record as a whole. *Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even where substantial evidence also supports the opposite conclusion and the reviewing court would decide the matter differently. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

**DISCUSSION AND ANALYSIS**

The Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff had to show that:

(1) she was not presently engaged in substantial gainful employment; and

(2) she suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

>       (4)     she did not have the residual functional capacity (RFC) to perform his relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(e); 20 C.F.R.. § 416.920(a)-(e). If Plaintiff's impairments prevented her from doing her past work, the Commissioner would, at step five, consider her RFC, age, education and past work experience to determine if she could perform other work. If she could not, she would be deemed disabled. 20 C.F.R. § 404.1520(f). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

The ALJ concluded that Plaintiff retained the RFC to perform light work with only occasional interaction with the public, only occasional changes in work setting or procedure, no independent decision-making or planning, bending at the waist, bending at the knees, kneeling, crawling, climbing stairs, and no climbing ladders, a minimum of detailed instructions, no extended periods of concentration, no fast paced work, or exposure to unprotected heights or hazardous machinery. (Tr. 26).

Plaintiff argues that the ALJ improperly concluded that Plaintiff's diabetes was controllable. Plaintiff presents this argument directly and also argues that Plaintiff should have determined she was incapable of light work because Plaintiff's hypoglycemia makes her incapable of meeting the demands of light work.

The record clearly shows that Plaintiff's blood sugar levels have not been adequately controlled for much of the period since she applied for SSI. The ALJ did not include all of the functional limitations that could be expected to result from Plaintiff's frequent and severe hypoglycemia because he concluded that while Plaintiff's diabetes has not been adequately controlled, it is controllable. While the ALJ cited the opinions of DDS medical examiners and Plaintiff's reported daily activities, his conclusion appears to rest principally on records from Plaintiff's treating physicians. The ALJ noted that Plaintiff had several periods in which she was able to control her blood sugar relatively successfully. Specifically Plaintiff's blood sugar level was stable when her medications and diet were regulated in a controlled environment in June, 2002, and Plaintiff's children reported that she was non-compliant with her dietary and medication regime while at home.

Plaintiff argues that none of these pieces of evidence demonstrates that her diabetes is controllable. However, the Court must affirm the Commissioner's decision if it finds that it was supported by substantial evidence on the record. While the record might support differing conclusions, there is sufficient evidence to support the conclusion that Plaintiff does not follow her dietary and medication regimen, and that her diabetic symptoms would improve significantly if she were compliant. The ALJ's RFC determination, and his step five finding that Plaintiff was not disabled, were supported by substantial evidence.

## **RECOMMENDATION**

The Commissioner's decision is supported by substantial evidence. Plaintiff's Motion for Summary Judgment should be DENIED, and. Defendant's Motion for Summary Judgment should be GRANTED.

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: 12/01/05                                             s/ Mona K. Majzoub
                                                            MONA K. MAJZOUB
                                                            UNITED STATES MAGISTRATE JUDGE


**Proof of Service**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: 12/01/05                                             s/ Lisa C. Bartlett
                                                            Courtroom Deputy

-8-